IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIM LEE DAVIS,<br><br>   Plaintiff,<br><br> v.<br><br>JEFF MACOMBER, et al.,<br><br>   Defendants. | No. 2:19-CV-0848-DMC-P<br><br><br>ORDER |

    Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is Plaintiff's complaint (ECF No. 1).

    The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

1

rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I.  PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants: (1) Marion Spearman, prison warden; (2) J. Ginder, correctional lieutenant; (3) D. Cox, correctional officer; (4) F. Rodriguez, correctional officer; (5) J. Salazar, correctional officer; (6) Carla Delgado, registered nurse; and (7) Jeff Macomber, Deputy Director of Facility Support at California Department of Corrections and Rehabilitation (CDCR). The allegations outlined in the complaint may be summarized as follows:

Plaintiff alleges Defendants Cox, Rodriguez, and Salazar used excessive force against him during an escort through the prison. See ECF No. 1, p. 7-9. Defendant Rodriguez used Defendant Salazar's baton to knock Plaintiff off his feet. See id. at 9. While Plaintiff was on the ground, Defendant Cox placed his knee on the back of Plaintiff's head and pinned his face to the ground. See id. at 7. Defendant Rodriguez then told Defendants Cox and Salazar to "slam" Plaintiff. Id. Defendants Cox and Salazar beat Plaintiff, who suffered from loss of consciousness, lacerations, and bone fractures. See id. Before this alleged assault, Plaintiff had filed several reports against various correctional officers for misconduct. See id. at 6. He was concerned these reports put his safety at risk. See id. Although Plaintiff voiced these concerns and asked Defendant Spearman to transfer him to another part of the prison, Defendant Spearman refused. See id.

Plaintiff further alleges Defendants Cox, Rodriguez, Salazar, Ginder, and Delgado each falsified their reports to cover up the incident. See id. at 7-11. Additionally, Defendant Ginder issued Plaintiff an alleged retaliatory Rules Violation Report (RVR) and refused to hand over Plaintiff's injury report. See id. at 10.

**II. DISCUSSION**

This court identifies the following six potential claims: (1) Defendants Cox, Rodriguez, and Salazar violated Plaintiff's Eighth Amendment right against excessive force; (2) Defendants Jeff Macomber and Marion Spearman violated Plaintiff's Eighth Amendment rights by failing to protect his safety; (3) Defendant Ginder unconstitutionally retaliated against Plaintiff's First Amendment right to file grievances by filing an RVR; (4) Defendants Cox, Rodriguez, Salazar, Ginder, and Delgado violated Plaintiff's right to due process by falsifying their incident and medical reports; (5) Defendant Ginder violated Plaintiff's right to due process by withholding a copy of Plaintiff's injury report; and (6) Defendants Cox, Rodriguez, Salazar, Ginder, and Delgado conspired to falsify their reports. The court finds all claims, except the Eighth Amendment claims against Defendants Cox, Rodriguez, Salazar, and Spearman, are insufficient for service. The court will provide Plaintiff an opportunity to amend his remaining claims.

**A.**     <u>**Eighth Amendment Claims**</u>

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993); <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See <u>Farmer</u>, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." <u>See id.</u>

1. Excessive Force

When prison officials stand accused of using excessive force, the core judicial inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. See Whitley, 475 U.S. at 320-21. In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). The lack of injuries is also probative. See Hudson, 503 U.S. at 7-9. Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. See Whitley, 475 U.S. at 321-22.

As it stands, Plaintiff's states a cognizable Eighth Amendment claim against Defendants Cox, Rodriguez, and Salazar for using excessive force against him. The complaint sufficiently demonstrates Defendants acted maliciously and sadistically to inflict harm rather than to restore or maintain discipline. Thus, Plaintiff's claim is sufficient for service.

2. Safety

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See id. at 837. The very obviousness of the

risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

### a. Defendant Spearman

Here, Plaintiff states a cognizable claim against Defendant Spearman for deliberate indifference to his safety. The complaint adequately alleges Defendant Spearman knew of an excessive risk to Plaintiff's safety and disregarded this risk by placing him in a facility where he risked retaliatory acts by correctional officers. Plaintiff's claim against Defendant Spearman is sufficient for service.

### b. Defendant Macomber – Supervisory Liability

Here, the court cannot determine whether Plaintiff intends to name Jeff Macomber or Ralph Diaz as a defendant. While the complaint's caption and "Defendants" section names Jeff Macomber, the Plaintiff's actual claim names Ralph Diaz as "Director/Commissioner" of the CDCR. Compare ECF No. 1, p. 1, 3 with id. at 5. Therefore, it is unclear whether Plaintiff intends to name Ralph Diaz, Secretary of the CDCR, or Jeff Macomber, Deputy Director of Facility Support of the CDCR. Regardless, Plaintiff fails to state any cognizable claim against either individual.

Plaintiff's claim alleges liability under a respondeat superior theory, which is insufficient for his § 1983 claim. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can

be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.

Here, there are no alleged facts regarding involvement beyond supervisory status. The complaint only asserts liability based on alleged responsibility for the overall operations of the CDCR. Therefore, this court cannot infer the named individuals personally violated Plaintiff's constitutional rights or implemented unconstitutional policies. Thus, Plaintiff has failed to state a cognizable claim against supervisory individuals, Defendant Macomber in particular.

Plaintiff will be given leave to amend his complaint. The amended complaint must specifically support a causal link between named defendants and the alleged violation of Plaintiff's constitutional rights. Furthermore, Plaintiff should clarify the identity of the named defendant.

**B.** **First Amendment Retaliation Claim**

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting

this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect." Id. at n.11. By way of example, the court cited Pratt in which a retaliation claim had been decided without discussing chilling. See id. This citation is somewhat confusing in that the court in Pratt had no reason to discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate penological interests. See Pratt, 65 F.3d at 808-09. Nonetheless, while the court has clearly stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action which is more than minimal satisfies this element. Thus, if this reading of Rhodes is correct, the chilling effect element is essentially subsumed by adverse action.

Here, Plaintiff's allegations insufficiently allege a First Amendment retaliation claim against Defendant Ginder. The complaint does not establish Defendant Ginder's RVR was in response to Plaintiff's grievance reports or any other conduct protected by the First Amendment. Instead, Plaintiff merely labels the RVR as retaliatory without further support for this inference. Because Plaintiff fails to demonstrate a causal link between Plaintiff's protected conduct and the RVR, his claim is inadequate for service.

7

### C. **Fourteenth Amendment Due Process Claims**

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). Due process protects against the deprivation of property where there is a legitimate claim of entitlement to the property. See Bd. of Regents, 408 U.S. at 577. Protected property interests are created, and their dimensions are defined, by existing rules that stem from an independent source – such as state law – and which secure certain benefits and support claims of entitlement to those benefits. See id.

Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question ". . . is within the normal limits or range of custody which the conviction has authorized the State to impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405. Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481-84 (1995). In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84. Prisoners in California have a liberty interest in

the procedures used in prison disciplinary hearings where a successful claim would not necessarily shorten the prisoner's sentence. See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate release from prison were cognizable under § 1983).

Finally, with respect to prison disciplinary proceedings, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff, 418 U.S. at 563-70. Due process is satisfied where these minimum requirements have been met, see Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56. However, a due process claim challenging the loss of good-time credits as a result of an adverse prison disciplinary finding is not cognizable under § 1983 and must be raised by way of habeas corpus. See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

1. False Incident, Medical, and Rules Violation Reports Claims

Plaintiff alleges Defendants Cox, Rodriguez, Salazar, Ginder, and Delgado falsified their incident and medical reports. To the extent Plaintiff intends to claim these actions violated his due process rights, he fails to state a cognizable claim.

The facts do not sufficiently demonstrate the falsified reports denied Plaintiff life, liberty, or property without due process of law. Although Plaintiff claims Defendant Ginder's and Delgado's actions caused him to suffer "mentally, emotionally, and physically," he has not adequately specified how these reports deprived him of substantive or procedural due process.

9

ECF No. 1, p. 10-11. For example, Plaintiff does not allege the deprivation of some procedural opportunity related to a disciplinary hearing. Instead, his claim focuses on the mere existence of these allegedly false reports. However, the existence of these reports alone, without more, does not support a due process claim.

Specific to Defendant Ginder's allegedly false RVR, courts have held there is no protection for prisoners against false charges or wrongly issued disciplinary reports. See e.g., Buckley v. Gomez, 36 F. Supp. 2d. 1216, 1222 (S.D. Cal. 1997) (holding plaintiff had no rights against a falsified report in his grievance response), aff'd without opinion, 168 F.3d 498 (9th Cir. 1999). This district has also held the issuance of a false crime report does not, in and of itself, support a claim under § 1983. See, e.g., Johnson v. Felker, 2013 WL 6243280 (E.D. Cal. 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under § 1983."). Therefore, without allegations that these reports denied Plaintiff some liberty or property interest, his claim is not cognizable.

### 2. Denial of Injury Report

Plaintiff also claims Defendant Ginder denied him a copy of his injury report. To the extent that Plaintiff intends to allege this denied him due process, he has failed to state a cognizable claim. Plaintiff has identified neither a property nor a liberty interest in possessing the injury report. As a property interest, he has not demonstrated more than an abstract need for the report. As a liberty interest, there is no assertion, for example, that Defendant Ginder's actions deprived Plaintiff of medical treatment or due process in a disciplinary hearing. Plaintiff only asserts that he was denied access to the report. Thus, Plaintiff has failed to identify a right, protected by the Due Process Clause, that was violated. Defendant Ginder, as alleged, did not violate Plaintiff's Fourteenth Amendment right to due process.

Plaintiff will be given leave to amend his complaint. To successfully plead his due process claim, he must show the denial of the injury report led to the deprivation of a property or liberty interest.

**D.     Conspiracy Claim**

Plaintiff also alleges a conspiracy among Defendants Cox, Rodriguez, Salazar, Ginder, and Delgado to cover up Defendant Cox, Rodriguez, and Salazar's use of excessive force. To establish a conspiracy under 42 U.S.C. § 1983, a plaintiff must show (1) the existence of an express or implied agreement among the defendants to deprive the plaintiff of his constitutional rights and (2) an actual deprivation of those rights resulting from that agreement. See Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010).

Here, Plaintiff fails to establish an adequate conspiracy claim. Plaintiff alleges no facts to support the existence of an agreement to violate his constitutional rights. Instead, Plaintiff's claim relies on conclusory statements alone. However, these threadbare assertions are insufficient to pass the screening standard. Plaintiff will be given leave to amend.

## III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the court will issue findings and

recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a first amended complaint within 30 days of the date of service of this order

Dated: June 12, 2019

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE